WESTERN FOODS, INC., and Beverly Enterprises, Inc. *v.* Richard WEISS, Director of Arkansas Department of Finance & Administration; Tim Leathers, Commissioner of Revenue of the State of Arkansas; Floyd Villines, Pulaski County Judge; James Daily, Mayor of Little Rock; and Jimmie Lou Fisher, Treasurer of the State of Arkansas

98-612                                          992 S.W.2d 100

Supreme Court of Arkansas
Opinion delivered June 17, 1999

*Harley Law Firm,* by: *John H. Haley,* for appellants.

*Amanda Mankin* and *Karla Burnett,* for appellant Villines.

*Thomas M. Carpenter,* for appellee Dailey.

*Beth B. Carson,* for appellees Weiss and Leathers.

W H. "DUB" ARNOLD, Chief Justice. This is a case involving the interpretation of Act 536 of 1991, codified as Ark. Code Ann. § 26-74-212 (Repl. 1997), Ordinance No. 16,496 of the City of Little Rock, and Ordinance No. 95-OR-42 of Pulaski County, Arkansas. The relevant facts are not in dispute.

In 1982, by Ordinance NO. 82-OR-12, Pulaski County levied a one percent local sales tax, pursuant to the authority granted by the legislature through Act 991 of 1981, which was amended by Act 26, of 1991. This new provision was codified as Ark. Code Ann. § 26-74-212 and included a portion commonly referred to as the "out-of-county delivery exemption." Under this provision, a sale by a business in Pulaski County would not have been subject to the Pulaski County sales tax if the goods had been sold to a nonresident of Pulaski County and delivered outside of the county.

In 1991, however, Act 536 changed the manner in which local taxes would be collected, by amending Ark. Code Ann. § 26-74-212 to narrow the "out-of-county delivery exemption" on all but a few sales, those being sales through meter and by route delivery, none of which are applicable in this case. Following this amendment, if the sale was made to a resident, with delivery in a county or city that does not impose a city or county sales tax, the tax would then not be applicable.

In 1993, the City of Little Rock passed Ordinance No. 16,496 to levy a one-half percent sales and use tax, pursuant to Ark. Code Ann. § 26-75-201 (Repl. 1992) *et seq.* The ordinance provided that the tax would be levied on the receipts from the sale at retail within the city of all items which are subject to state sales tax. In 1995, Pulaski County levied a one-year, one percent sales and use tax by Ordinance 95-OR-42; the tax was levied on sales at retail within the county of all items which are subject to state sales and was effective from October 1, 1995, through September 30, 1996.

Appellant Western Foods sold tangible personal property to customers including appellant Beverly Enterprises. The goods sold to appellant Beverly Enterprises were delivered by appellant

Western Foods to locations outside of Pulaski County, Arkansas. According to the testimony of Ed Fason, Vice President and General Manager of Western Foods, a Western Foods sales person would take an order and input the order in his computer, which would be downloaded to Western Foods located in Little Rock. Western Foods would then fill the order and deliver the order by truck to the customer.

The appellants paid taxes to the State in the amount of $56,456.89 on products delivered by Western Foods to Beverly Enterprises located outside Pulaski County, Arkansas, from January 1995 through December 1995. Appellants requested a refund of $56,456.89 for both Pulaski County sales taxes and the City of Little Rock sales taxes allegedly illegally levied by appellees. On March 27, 1996, the Commissioner of Revenue denied appellants' request for a refund.

On October 5, 1995, the Central Arkansas Office of Field Audit completed a gross-receipts tax audit of Western Foods and gave notice to Western of a proposed assessment of $196,169.06 for the period of time from December 1991 to November 1994 for goods sold to Beverly Enterprises. On November 13, 1995, Western Foods protested the assessment with the request that the matter be heard by the Office of Hearings and Appeals.

On May 15, 1995, an administrative hearing was held in Little Rock. The administrative law judge ruled against Western Foods on all issues. Western Foods appealed, and the Commissioner ruled against Western Foods on October 25, 1996.

On January 21, 1997, pursuant to Ark. Code Ann. § 26-18-406(a)(1) (Repl. 1992), and within thirty days from the date of the final assessment, Western Foods paid the assessed amount of $196,169.06 under protest. Western Foods and Beverly Enterprises then brought suit against appellees in Pulaski County Chancery Court on May 8, 1996, alleging that the State was illegally exacting the Pulaski County and Little Rock sales taxes. Appellants sought a refund of the taxes paid, injunctive relief, and attorneys' fees.

On February 16, 1997, appellants moved to certify the cause as a class action, seeking to include all similarly situated taxpayers in Pulaski County. On May 2, 1997, the chancery court issued an order declaring that the tax was not an illegal exaction. On May 30, 1997, appellants then filed a motion for reconsideration and clarification regarding the illegal-exaction claims and the question of class certification. Also on May 30, 1997, appellants filed a second amended complaint, again requesting certification as a class action, requesting a refund of the $56,456.89 and reimbursement of the $189,198.06, and claiming violations of their civil rights.

On February 4, 1998, the chancellor issued an order dismissing the complaint with prejudice. After entry of this final order, appellants filed a timely notice of appeal. Appellants assert the following on appeal:

1)  That the State of Arkansas has illegally exacted and is continuing to illegally exact the Pulaski County and City of Little Rock retail sales taxes from sales outside the county and city; the Arkansas tax scheme violates Arkansas Constitution Article 16, Section 1, and Amendment 62; and

2)  The Chancellor erred in failing to certify this cause as a class action.

We hold that the taxes challenged do not constitute an illegal exaction and hereby affirm the trial court.

It is well settled that chancery cases are reviewed *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*; *RAD-Razorback Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). In the instant case, the relevant facts were primarily stipulated by the parties and are not in dispute.

The record is clear that appellants do not dispute the power of the Little Rock and Pulaski County taxing authorities to impose a sales tax on sales of goods within the city or county. The

appellants claim, however, that the State of Arkansas illegally exacted and is continuing to attempt to illegally exact the Pulaski County and Little Rock retail sales tax from sales made outside the county and city. Appellants allege that the Arkansas tax scheme violates Arkansas Constitution Article 16, § 1, and Amendment 62. They further assert that without approval at a special election, neither Pulaski County, the City of Little Rock, nor the State of Arkansas can exact a Pulaski County or Little Rock sales tax on sales occurring outside the City of Little Rock or the County of Pulaski.

■ We hold that appellants have failed to plead an illegal-exaction claim. This Court has held that two types of illegal-exaction cases can arise under Article 16, § 13, of the Arkansas Constitution. The first type is a "public funds" case, in which the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. The second type is an "illegal tax" case, in which the plaintiff asserts that the tax itself is illegal or contrary to a constitutional or statutory provision. *See Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999); *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 937; *Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992).

The instant case does not fall into either category. Appellants did not allege in their complaint that funds generated by the Little Rock and Pulaski County sales taxes had been misapplied or illegally spent. Moreover, they did not allege that the local tax ordinances are invalid; and, Act 536 of 1991 cannot be challenged as an illegal exaction because it is not a tax-levying statute.

Appellants contend, however, that this action is in direct conflict with the Arkansas constitutional provisions requiring voter approval prior to municipality or county taxation. The primary issue in this case is whether the State of Arkansas can collect the Pulaski County and Little Rock local sales taxes on sales of tangible personal property to a business located outside of Pulaski County without providing the citizens of Pulaski County or Little Rock an opportunity to vote on whether the local tax would apply to out-of-county or out-of-city deliveries.

In 1981, the General Assembly gave counties and cities the authority to implement a sales tax that included the out-of-county exemption. In 1982, the citizens of Pulaski County voted to implement the tax. In 1991, the General Assembly narrowed, by amendment, the out-of-county exemption for most sales. Appellants contend that since the citizens of Pulaski County have never voted to adopt the amended tax, narrowing the out-of-county exemption, then the county and city cannot begin charging the tax on out-of-county purchases and deliveries.

■ Appellants' argument is without merit. First, the citizens of Pulaski County and the City of Little Rock *did* vote on the sales tax. The *legislature* set the parameters of the tax and has the authority to modify the tax at any time. Municipalities have only those taxing powers delegated by the General Assembly. *See Barnhart v. City of Fayetteville*, 321 Ark. 197, 900 S.W.2d 539 (1995). No *new* tax is being implemented by amending the out-of-county exemption; rather, only the exemption itself is being narrowed.

■ The General Assembly has the authority to pass a statewide sales tax. It further has the authority to amend the type of exemption found here in a sales tax, without first requiring the municipalities to hold another election to determine if voters agree with the amendment. The General Assembly has delegated the power to levy sales and use taxes to cities and counties but has not delegated the power to determine which transactions are subject to the tax, who collects the tax, when the tax is due, interest and penalties applicable to delinquent taxes, and other such items.

■ Further, suits to determine whether the taxpayer transaction falls within an exemption created by statute do not come within the Article 16, § 13, exaction section. We have held that a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, does not make the exaction itself illegal. *See Pledger v. Featherlite Precast Corp., supra.*

The State sets the parameters of the tax and the only decision that a city or county can make is whether to levy the tax. The General Assembly was careful to require that the tax may only be collected from a customer located in another county or city which also has a sales tax. If appellant Beverly Enterprises was located in

a county that did not have a sales tax, then the out-of-county exemption would then apply.

Appellants rely on *Barnhart, supra,* for the proposition that the taxation upon them from the City of Little Rock and Pulaski County is an illegal exaction. The facts in *Barnhart,* however, are distinguishable from the case at bar. In *Barnhart,* the City of Fayetteville imposed a sanitation charge of $2.02 on each resident to pay a bonded indebtedness owed by the Northwest Resource Recovery Authority. This Court set aside the sanitation charge, holding that it was a tax that had not been voted upon or approved by the residents of the City of Fayetteville.

■ Unlike the *Barnhart* case, in the instant case, the citizens of both Pulaski County and the City of Little Rock had previously voted to levy a sales tax which included the out-of-county delivery exemption. The General Assembly, in its authority as the legislative body that establishes the parameters of a tax, elected to withdraw the out-of-county delivery exemption in 1991. The difference between *Barnhart* and the facts present here is that the citizens of the City of Fayetteville did not vote on the tax, whereas the citizens of Pulaski County and the City of Little Rock did vote for the sales and use tax. The legislature later elected to change only the parameters of the tax by narrowing the out-of-county delivery exemption.

■ Appellants contend that collection of the city and county sales taxes without voter approval is in direct conflict with Arkansas constitutional provisions, citing Article 16, § 1, and Amendment 62. These provisions, however, prohibit the issuance of *bonds* by a city or county without an election. None of the ordinances challenged in this case were tied to the repayment of bonds. Accordingly, appellants' argument would have to be based on the requirement of a local election found in Ark. Code Ann. § 26-74-207 (Repl. 1997) (counties) and § 26-75-208 (Repl. 1997) (cities), and the question then becomes one of statutory construction.

■ These provisions require voter approval of local tax ordinances and were followed in this case. They do not require a subsequent election any time the General Assembly modifies an

exemption. Therefore, it was not necessary for the citizens of Pulaski County or the City of Little Rock to vote on whether their sales tax applies to sales to out-of-county customers because the General Assembly, composed of representatives from throughout the State, made the decision that sales taxes are applicable to sales made to customers outside of the taxing municipality.

Appellants further assert that this Court's decision in *Daniel v. Jones,* 332 Ark. 489, 966 S.W.2d 226 (1998), requires the Court to reconsider the constitutionality of the imposition of a tax when the full nature of the tax is not made known to the electorate when they vote to accept the tax. This ballot title argument was never raised below, and may not be addressed for the first time on appeal. Appellants never challenged the constitutionality of any ordinance or Act 536 of 1991; in fact, they admitted in the trial court that the ordinances were valid, and the validity of Act 536 of 1991 was never challenged below, only its effect.

Notwithstanding appellants' failure to preserve the argument for appeal, the *Daniel* case offers no support to appellants' argument. The facts in *Daniel* are that the White County local sales and use tax ballot reflected five specific county uses for the tax. The one percent tax was collected by the Arkansas Department of Finance and Administration and remitted to the State Treasurer, who divided the proceeds among White County and the cities within the county on a per capita basis, as required by state law. The county's share of the tax proceeds was used for the specified county projects. The tax was challenged as an illegal exaction based on Ark. Const., Art. 16, § 11, which provides, in part, that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." Because the county ordinances and the ballot only listed the specific county projects and did not note that a portion of the tax would go to the cities, the distribution of a portion of the tax to the cities was an illegal use of the tax.

Appellants seem to read *Daniel* to require an ordinance or ballot to include not only the purpose of the tax proceeds and the particular tax being levied, but a description of taxable and exempt transactions, as well. That is not the law. In

*Daniel,* we cited our holding in the case of *Oldner v. Villines,* 328 Ark. 296, 943 S.W.2d 574 (1997):

> When a tax is enacted by the General Assembly or approved by a vote of the people without the statement of a purpose, the resulting revenues may be used for general purposes. We fail to see how the voting public could be misled on this point. *It is only when a diversion of tax revenues occurs from a specific purpose that has been authorized to an unauthorized purpose that an illegal exaction occurs.*

328 Ark. at 305, 943 S.W.2d at 579 (emphasis added). *Id.* at 499.

     In the instant case, the ordinances state that the sales tax shall apply to sales of items and services. It would be impossible to enumerate all taxable transactions and exemptions which would apply. State law clearly provides that items which are subject to state sales tax are subject to local tax. State law clearly enumerates various exemptions and describes how the tax is to be collected and enforced. Accepting appellants' argument would require every ordinance or ballot to provide voters with the excruciating details of local tax application, enforcement, and collection.

     Appellants focus on the need for voters to have been informed that there would be no out-of-county or city exemption as a result of Act 536. However, even if the ballot had contained such information, *voters* would not have been able to claim the former exemption in the first place, unless they were selling to out-of-county buyers; and, the narrowing of the exemption only served to increase local sales tax revenues. Appellants have clearly not established that any of the local taxes at issue constitute illegal exactions. They did not challenge the misappropriation of the tax monies in question, nor did they challenge the underlying tax itself, as required for an illegal exaction to arise. *Pledger v. Featherlite Precast Corp., supra.*

     For all of the foregoing reasons, we hold that Act 536 of 1991 and the tax ordinances of Pulaski County and the City of Little Rock are valid and do not amount to an illegal exaction; we hereby affirm the trial court. Having found no illegal exaction,

we therefore need not address appellants' second point on appeal regarding the certification of this case as a class action.

Affirmed.

Special Associate Justice JOHN WATKINS joining.

BROWN, J., not participating.