The Honorable Daniel "Bubba" Powers State Representative 552 Hempstead 104 North Hope, Arkansas 71880-6019
Dear Representative Powers:
I am writing in response to your request for an opinion concerning a 1992 bond issuance in Hempstead County. The approved ballot-measure and subsequent ordinance listed the construction of "jail facilities" as the purpose of the bond issuance. Your question is whether Hempstead County may "use money from this issuance to also build a juvenile detention center."
You enclosed a copy of the ballot measure, which passed by a majority vote. The ballot stated:
 FOR an issue of bonds of Hempstead County in the maximum principal amount of $2,500,000 to finance the acquisition, construction, and equipping of new jail facilities, including law enforcement, administrative and parking improvements for or within such facilities, and, in order to secure the bonds, the pledge of up to 100%, as determined by the Quorum Court, of the ½ % sales and use tax levied by Hempstead County if such tax is approved by the voters at this special election . . .
After the ballot passed, the quorum court enacted the following ordinance to effect the voters' will: *Page 2 
 WHEREAS, there was submitted to the qualified electors of Hempstead County, Arkansas . . . the question of issuing . . . capital improvement bonds . . . for the purpose of financing the cost to the County of acquiring, constructing and equipping new county jail facilities, including related law enforcement, administrative and parking improvements for or within such facilities . . ."
RESPONSE
Unfortunately, I cannot issue a definitive conclusion on your question. Any definitive conclusion would require me to determine how the voters understood the phrase "jail facilities." The Attorney General is not authorized to make such a determination. See, e.g., Op. Att'y Gen. 2003-326. Thus, as my predecessor noted when faced with a similar question about this same ballot and ordinance, "[o]nly a finder of fact could determine whether using the tax revenues to construct the proposed improvements referenced in your request would be consistent with the uses authorized by the voters." Op. Att'y Gen. 2003-146, at 2.
With these preliminary points in mind, I can set out the relevant legal analysis. Assuming the issue turned solely on the words "jail facilities" in the ballot and ordinance, then in my opinion a court would, in all likelihood, hold that moneys derived from these bonds may be used to construct a juvenile detention facility.
Arkansas law is clear that bonds issued for one purpose cannot be diverted to another purpose. The ordinance enacting the approved ballot-measure indicates this bond issue was pursuant to Amendment 62 to the Arkansas Constitution. This amendment provides in pertinent part:
 The legislative body of a municipality or county, with the consent of a majority of the qualified electors voting on the question at an election called for that purpose, may authorize the issuance of bonds . . . for capital improvements of a public nature . . . in amounts approved by a majority of those voting on the question. . . . If more than one purpose is proposed, each shall be stated separately on the ballot.
Amend. 62, § 1(a). Article 16, § 11 of the constitution further provides in pertinent part that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." See A.C.A. § 14-58-203(b)(1) (Repl. 1998) ("Funds resulting from *Page 3 
taxes levied under statutes or ordinances for specific purposes may not be diverted to another purpose . . ."); Hartwick v. Thorne,300 Ark. 502, 780 S.W.2d 531 (1989).
The Arkansas Supreme Court has held that to determine the voters' intent, we must read the ballot and ordinance in conjunction. Maas v.City of Mountain Home, 338 Ark. 202, 992 S.W.2d 105 (1999). TheMass court explained its rationale: "The ballot is the `final word' to the voters only in the sense that it is the last source of information, not in the sense that it is conclusive of the measure's effects. It must be read in conjunction with the levying ordinance." Mass, supra, at 208. Only in instances when the voters' intent is ambiguous should a court resort to extrinsic evidence to determine whether a particular use of bond revenues is authorized. See, e.g., Arkansas State HighwayCommission v. Mabry, 229 Ark. 261, 315 S.W.2d 900 (1958); Op. Att'y Gen. No. 97-260.
Here, the ballot and ordinance use nearly identical language to describe the purpose and scope of the bond revenues. The ballot's key wording is "to finance the acquisition, construction, and equipping of new jail facilities, including law enforcement, administrative and parking improvements for or within such facilities. . . ." Similarly, the ordinance uses the same words, though conjugated to fit the sentence: "for the purpose of financing the cost to the County of acquiring, constructing and equipping new county jail facilities, including related law enforcement, administrative and parking improvements for or within such facilities."
This language, thus, unambiguously authorizes a bond issuance to pay for "jail facilities." The only remaining issue is whether voters understood "jail facilities" to include juvenile detention centers. This issue could be resolved either by appealing to a common definition of "jail facilities" or by marshalling facts to determine the voters' intent. When presented with a similar issue, the Arkansas Supreme Court used the definition method. McArthur v. Campbell, 225 Ark. 172,280 S.W.2d 219 (1955).
The McArthur court was asked to determine whether the term "county jail" under Amendment 17 to Arkansas's constitution includes "juvenile detention centers."[1] The McArthur court held that a "jail" includes juvenile detention centers: *Page 4 
 Our law requires that juveniles be kept separate from adult prisoners. . . . The contention of the appellant is that the proposed building[2] is not a county jail. Webster's Dictionary defines a jail (among other definitions) "as a building for the confinement of persons held in lawful custody." A county jail, whether for adults or juveniles, in the common acceptation of the term is a place for the legal detention of all persons, who come within the provisions of our laws which authorizes our law enforcement officers to detain them. Many persons, who are not criminals, are taken by officers to the jail. They may never be charged with any offense and still be legally in the custody of some officer. They are sometimes held for investigation, as a witness or for any reason which would tend to protect society or the person detained.
 A jail is no longer just a prison. It is rather a place also where persons in lawful custody are processed or handled and may be liberated, passed on to other legal entities, detained for a short or long time — s o long as the detention thereof is legal.
McArthur, supra, at 172.
While the McArthur court considered the scope of the phrase "county jail" in the context of (the now repealed) Amendment 17, the court's holding may be instructive in other contexts. The court cited Webster's Dictionary for a general definition of "jail," holding that the phrase included juvenile detention centers. Therefore, if a court was faced with construing "jail facilities" in other contexts, a court, in my opinion, would most likely use the same approach and hold that the phrase includes juvenile detention centers.
Thus, assuming that the issue turned solely on the words "jail facilities" in the 1992 ballot and accompanying ordinance, I believe a court would probably rely on McArthur and hold that the bond proceeds may be used to construct a juvenile *Page 5 
detention center. I must emphasize, however, that a definitive resolution is outside the scope of an opinion from this office.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN MCDANIEL, Attorney General
[1] Amendment 62, which is the basis for the ballot and ordinance about which you ask, repealed Amendment 17. See generally, Keeton v.Barber, 305 Ark. 147, 806 S.W.2d 363 (1991). Amendment 17 permitted a tax to be levied to construct, among other things, a county jail: "The power . . . is hereby vested in the qualified electors of each respective County . . . to authorize the construction . . . [of a] County Jail . . . and to authorize the levy of a tax . . . in such County . . . to defray the costs and expenses thereof. . . ."
[2] The court described the "proposed building" as "a county jail, for the handling, detention and rehabilitation of juveniles."McArthur, 225 Ark. at 172, 280 S.W.2d at 219. *Page 1